All right, our second case for this morning is Timothy Delong v. Commissioner Andrew Saul of the Social Security Administration. And we are to hear from Mr. Richter first, and then Mr. Jaynes. So, Mr. Richter. Thank you, Your Honor. Good morning, and may it please the Court. There are several issues in this case, but they all essentially boil down to a question of whether Mr. Delong's limitations are the result of a personality disorder with schizoid traits, amnestic disorder with extreme visio-spatial memory and processing limitations, or whether the Social Security Administration's ultimate assessment of him as a malingerer who was exaggerating his condition for monetary gain better explained his limitations. There's more at stake in this case than just appellant's 10-year struggle for disability benefits and the financial hardship he's had to withstand in order to endure that struggle. The Social Security Administration has concluded that Mr. Delong is a dishonest actor in this. It says it right in the ALJ's decision. She concluded he was exaggerating his condition for monetary gain. It's plaintiff appellant's condition that if you are going to conclude that way about a claimant, who happens to also be a person, you'd better logically confront the evidence which suggests your conclusion is wrong. And that didn't happen here. So what, Mr. Richter, in your view, is the best evidence in this record that would tend to show that the exaggerating behavior, which I think you have to concede was there, it's found by doctor after doctor, person after person, provider after provider, stemmed from an underlying psychological problem as opposed to simply being done deliberately to exaggerate symptoms? I mean, how do we work with this record and come up with one conclusion or the other? So it starts with Dr. Blake, the consultative examiner, another doctor contracted by the Social Security Administration who was hired to actually examine Mr. Delong and to assess limitations based on that examination. As you know, the Social Security Administration does have a policy, a regulation, that by its default is to defer to a doctor who has actually examined the claimant and can assess the behavior and make judgments about whether that person is in fact simply malignant. Or there's something deeper going on there that's causing that sort of odd behavior. And Dr. Blake concluded, he concluded that Mr. Delong was not a malingerer, that he was so limited as far as his thought processes go that he was operating under some sort of alternative logic. The challenge you have though with that, Mr. Richter, is I think that's a fair description. But it occurred in 2010, did it not? And you have the medical expert, Dr. Brooks, that comes, that enters the picture as a way of kind of canvassing all of the other opinions. And then you do have other opinions from treating physicians, the two neurologists, I think Dr. Herman. So in other words, if there was nothing that happened from 2010 and Dr. Blake forward, I think your position's pretty good. But you have some facts on that timeline that you've got to deal with with other treating physicians, do you not? Well, I understand, Your Honor. But those physicians are also supportive of our position, I believe. When you look at Dr. Herman, there are diagnoses of somatization disorder, schizoid traits. He actually opined in his examination that Mr. DeLong's thought processes were so compromised that even if he were to be approved for disability benefits and would no longer have any incentive to manipulate or malinger, he would still potentially sabotage himself financially. And to me, that indicates not necessarily an indication that he's a malingerer, but there's some deep-seated issue there that's causing this behavior. I think that's an important qualifier, the not necessarily malingering, because Dr. Herman and others expressly found that there was quite a bit of malingering. In other words, you've got to reconcile that fact with your position about Dr. Blake. There's no question in the record that Herman found meaningful malingering. Well, that's a subjective issue here, I think, Your Honor. Well, it's also a diagnostic issue. I mean, if Herman had meant to say that this guy was so impaired that he's saying he can't get the days of the week straight and he is missing all these questions, he would have said something different, but he was actually running tests to detect malingering, and he detected it. Well, Your Honor, he also diagnosed schizoid traits. He diagnosed somatization disorder. But you see, Mr. Richter, that what we're struggling with is once you get the malingering analysis or evaluation done as part of the analysis, then it's going to obviate a lot of the other findings that happen. So perhaps there is a medical professional out there, a psychological psychiatric professional, who can disaggregate the malingering aspect or see how it's grounded in the schizoid component, but that's not in the record here. That separation is not present. That's what we're struggling with. I think it's hard even for the medical doctors to make a very clear distinction when it comes to that because psychological impairments are inherently somewhat subjective. It depends on what the patient is telling the doctor. I agree with you that it's difficult, but here you run into the problem that the burden of proof to show the disability is on your client,  Right, but you also have, again, we go back to Dr. Blake, but also we have the neuropsychological examiner, Dr. Vogel, who said that his personality disorder, and I believe she diagnosed schizoaffective disorder as well, were so deep-seated that even psychotherapy would probably not alone be effective in resolving Mr. DeLong's odd behaviors or mental impairments. He's so ingrained in this alternative thought processes and it wouldn't be effective on him because he's not ripe for that sort of therapy or that sort of treatment. But I do see that I'm coming up here on the time I've reserved for rebuttal, and so I'll reserve that time. That's fine. Mr. Jaynes, you have an amazing background, or I'm envious of where you are. Thank you very much. Yes, ma'am, please record. Good morning, Your Honors, and good morning, Mr. Richter. I'm Daniel Robert Jaynes on behalf of the Commissioner. Your Honors, there are three chief flaws in DeLong's arguments. First, the ALJ found a mild rating, not a moderate, but a mild rating in concentration, persistence, and pace. DeLong tells you you cannot find the logical bridge, but Your Honors, you can't miss it. It leads right to the medical expert, Dr. Brooks, who found a mild rating in concentration, persistence, and pace. Second, no doctor found more restrictions than the ALJ. And third, DeLong effectively asked this court to step in and reweigh the evidence and credit the opinion of DeLong's attorney over six doctors. Now, in finding mild concentration, persistence, and pace, the ALJ relied on Dr. Brooks. Earlier this year, the court applauded the use of medical experts in cases where the evidence is conflicting or unclear. In a case called DeBauer, this court called it a prudent step. Particularly here, in a case with malingering, it was proper for the ALJ to call on Dr. Brooks, who had the opportunity and benefit of revealing a full record and providing a clear picture of DeLong's abilities. With that logical bridge intact, the Commissioner's regulations defined moderate as slight. Now, I could direct Your Honors to the dictionary, and I may have even done so in my brief, but a better example of what slight means is in the regulations. If DeLong had only mild ratings in all the B criteria, DeLong would have no severe mental impairments. Mr. James, can I ask you a question on the – this was – the district judge, Judge Magnus Stinson, remanded, right? And that's what led to our second hearing in these proceedings? That's correct, Your Honor. And when she remanded, one of the grounds that she remanded on was further exploration of the moderate CPP limitation, as she saw it in the record, correct? That's correct, Your Honor. Okay. In your brief on page 40, you point to the program operations manual by way of saying that in the second hearing,  in other words, to find mild, as is reflected in the second ALJ decision that's now on review before us. Can you say more about that? I was curious, in other words, whether that remand created – these are my words, not anyone else's – kind of law of the case, if you will, here, that on remand you're bound by the moderate determination by the district court. Correct, Your Honor. Well, in that remand, at that point, the ALJ had found moderate limitation in concentration, persistence, and pace. But the facts changed when that case went back. For instance, the opinion of Dr. Bigelow was entered into the record, and that was not before. But could I interrupt and say, I think the question is, were they allowed to change? I mean, if the previous proceedings fixed that part of the record at the moderate level, then you wouldn't be getting new evidence. And I think where you're being asked to explain under what legal authority, other authority, was this level of severity reopened for reconsideration, new evidence, re-decision? Yeah, exactly. It seems like there was a full-blown second hearing in which new evidence was taken and new findings were made. But the terms and conditions of the remand order are what they are. So you may be right. It would just help for you to explain it more. Certainly, Your Honor. Under the law of the case, the court needs to find a direct finding. So this required the court to find that DeLong had moderate limitation in concentration, persistence, and pace. None of our reading, and certainly I don't believe the court's reading, will show that that district court remand found moderate limitations in concentration, persistence, or pace. Well, where did the district court come up with it? I mean, she didn't just make it up. Well, our interpretation of that is that if the ALJ found moderate concentration, persistence, or pace, a rating in that, then the ALJ would need to provide limitations and explain that. But after it was remanded, we had new evidence, Dr. Bigelow and Dr. Brooks, that shed more light. It unearthed more evidence of malingering. It unearthed an opinion that was able to review the entire record and find that DeLong had mild, not moderate, concentration, persistence, or pace. Yeah, I mean, that's descriptively accurate for sure. Do you know of any specific law, though, in our circuit or other circuits that have addressed this point? There was a case. I don't have it off the top of my head. I could dig it up. Discussing law of the case and saying that there needed to be a finding by the court. So the court would have to say this. You know, I find that the claimant has moderate rating in concentration, persistence, or pace, and that the ALJ would be bound by that under a recent Seventh Circuit case. I don't recall the name of the case off the top of my head. I can certainly provide it in a post-hearing manner. No, that's all right. But the ALJ opinion that Judge Magnus Stinson was reviewing certainly thought that there was moderate limitation. And I'm not sure whether you're making the argument that those findings always disappear after a remand and it's opened up, or whether you're sort of making a sauce for the goose, sauce for the gander. You know, if Mr. DeLong is free to put new evidence in the record, then why shouldn't the commissioner? And if new evidence comes in, then you need to go where it leads you. So I don't know which argument you're making. That would be the latter half of what you just said. Certainly when the hearing is reopened, new evidence can enter the record. For instance, a new opinion from the doctors who opined about moderate rating in concentration, persistence, or pace could be entered into the record, and that might change the picture. And here we submit that it does change the picture with the opinion of Dr. Brooks. But regardless of mild or even moderate rating, DeLong still could not show harm, and remand would still have no utility because no doctor, even the doctors who assessed a moderate rating, found limitations beyond the ALJ. The doctors here spoke in one voice, almost all noted clear signs of malingering, and even so, all the opinions are equal or less restrictive than the residual functional capacity found by the ALJ. And in fact, what concentration, persistence, and pace cases come down to under recent circuit law is what is missing from the RFC, and DeLong says two things are missing. First, time off tasks, and second, additional breaks. But Your Honor, six doctors examined or opined, and not one of these six doctors found these limitations. So in other words, the ALJ, to credit DeLong's arguments, would need to do two things. First, he'd have to set aside every opinion of record, and second, he'd have to credit DeLong's attorney's opinion over six doctors. And in holding that, the court here would have to reweigh the evidence. But that's not what the court does under the substantial evidence standard of review. The court just says more than a mere scintilla, less than a preponderance, and the court only looks to whether a reasonable adjudicator could agree that the most with evidence cited by the ALJ, which was Dr. Brooks, who was able to review the whole record and give an opinion about mild limitation, or mild rating in concentration, persistence, or pace. And in this argument, too, with the moderate against the mild, DeLong attempts to read limitations into Dr. Lofko's opinion, who was the one who found moderate limitations in various areas. But Dr. Lofko clearly stated the limitations that DeLong had in the Section 3 narrative. And these facts mirror two recent cases from the circuit, Petluski and Urbanek, where the court upheld such moderate assessments and where the state agency psychologist gave that Section 3 narrative that clearly explained it. So to hold otherwise would be to overrule Urbanek and Petluski. And I'll close on a final note about malingering. What Mr. DeLong brings up here, the ALJ merely echoed what Dr. said in her decision, that DeLong tries to provide elaborate justifications excusing his malingering, but no doctor said directly that DeLong has limitations beyond the ALJ's residual functional capacity finding, or even that malingering was a direct symptom of his impairments. What did the doctors say? Dr. Blake said DeLong did not understand instructions after being repeated multiple times, and that DeLong could function better than examination and testing showed. Dr. Herman noted poor effort, strong indications of malingering. In fact, malingering was a principal diagnosis, and that DeLong presented as more impaired than as in reality. Dr. Bigelow said that DeLong presented in a dishonest and exaggerated manner to the extent that it actually invalidated results. And by the time Dr. Brooks conducted his review, he put it succinctly. This record has a lot of evidence of malingering. So here the ALJ followed the opinions, particularly the opinion of Dr. Brooks, yet still accommodated DeLong more than these doctors had opined. And this, Your Honors, is substantial evidence, and we ask that you affirm. And unless you have any questions, I'll rest on my brief. Thank you very much, then. Anything further, Mr. Richter? Yes, Your Honor, I wanted to touch just briefly on Dr. Brooks. It sounds like Commissioner wants to rely on Dr. Brooks' testimony to move on from that moderate limitation and concentration, persistence, and pace that the court previously gave versus mild. And there's a problem with that because there's a problem with Dr. Brooks' testimony. He missed some things. He inaccurately testified that there was no somatoform disorder in the record. There was at Dr. Herman's examination. Mr. Richter, in your view, was the second ALJ legally foreclosed from finding anything other than a moderate limitation? I believe so, Your Honor. What authority do you have for that? I don't have a specific authority, Your Honor. But just as a citizen, it's my understanding that when a federal court gives someone an order, it's an order, and it's to be followed and respected. And that's just my civic understanding of how courts work in the United States. And then the last thing I wanted to sum up really quick, because Commissioner has said that there's no doctor's opinion in the record that exceeds the RFC put forward by the ALJ. Well, you need look no further than the state agency physicians who reviewed the case at the very beginning who found there would be a moderate limitation in maintaining a normal work schedule or a normal work week. There would be interruptions from psychologically based symptoms that would implies some time off task. And while Commissioner is correct that an ALJ may rely on a narrative summation of those, he can't simply ignore them. Or she can't simply ignore them. She has to mention them. And you can read more about that in the DeCamp case. Thank you. All right. Thank you very much, then. Thanks to both counsel. The court will take the case under advisement.